**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION**

| | | |
|---|---|---|
| SUSAN K. SIZEMORE, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Case No. 4:10-CV-650 |
| | § | |
| DOLGENCORP OF TEXAS, INC. d/b/a | § | |
| DOLLAR GENERAL, | § | |
| | § | |
| Defendant. | § | |

**MEMORANDUM OPINION AND ORDER GRANTING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT**

The following are pending before the court:

1.  Defendant's partial motion for judgment on the pleadings and motion for complete summary judgment and incorporated brief in support (docket entry #24);

2.  Plaintiff's response to Defendant's partial motion for judgment on the pleadings and motion for complete summary judgment and brief in support subject to Plaintiff's motion to compel (docket entry #26);

3.  Defendant's reply brief in support of its partial motion for judgment on the pleadings and motion for complete summary judgment (docket entry #29); and

4.  Plaintiff's sur-reply brief in opposition to Defendant's reply brief in support of its partial motion for judgment on the pleadings and motion for complete summary judgment (docket entry #35).

Having considered the Defendant's motion for summary judgment and the subsequent briefing thereon,

the court is of the opinion that the Defendant's motion for summary judgment should be granted.[1]

---

[1]The Defendant also moved for judgment on the pleadings on a number of the Plaintiff's claims. However, since the Defendant moved for a complete summary judgment, the court will only consider the Defendant's motion for summary judgment.

## OBJECTIONS TO SUMMARY JUDGMENT EVIDENCE

The Defendant filed a motion to strike portions of the Plaintiff's summary judgment evidence (docket entry #26), objecting primarily to portions of the Plaintiff's declaration as well as portions of the Defendant's investigative file.  Having considered the objections with respect to the Plaintiff's declaration, the court notes that it will review the evidence provided in accordance with the appropriate summary judgment and evidentiary standards.  With respect to the Defendant's investigative file, the court finds the same to be appropriate summary judgment evidence since the Defendant disclosed the file to the Plaintiff.  The court has reviewed the Defendant's remaining objections and has only considered appropriate summary judgment evidence in reaching its decision.

## DISCOVERY ISSUES

The Plaintiff contends that the Defendant's motion for summary judgment should be denied because of the Defendant's intentional spoliation of evidence.  The court declines the Plaintiff's invitation to review this issue.  The Plaintiff should have filed a discovery motion with the court prior to the conclusion of the fact discovery deadline in order to preserve this issue.

The Plaintiff further argues that summary judgment should be denied because the Plaintiff has an outstanding motion to compel.  The Plaintiff's motion to compel seeks to discover the personnel files of 11 employees.  The Plaintiff, however, failed to offer an adequate basis for discovering the personnel files of these employees.  Accordingly, without more information, the court hereby **DENIES** the Plaintiff's motion to compel (docket entry # 19).

## BACKGROUND

The Plaintiff, a 54 year old female, began working for the Defendant on October 23, 2008 at the age of 50.  During her tenure with the Defendant, the Plaintiff worked at the Defendant's Dollar General

store in Whitesboro, Texas.  The Plaintiff was initially hired as a cashier/store associate.  The Plaintiff was promoted to the assistant store manager position later that same year.  On February 23, 2009, the Plaintiff received a "very good" performance review rating by the store manager, Debbie Crowder, and the district manager, Jerry Westbrook ("Westbrook").

Sometime in 2009, Debbie Crowder relinquished her position as store manager.  Rhonda Henderson, a female in her early twenties, was promoted to store manager.[2]  Ms. Henderson was soon replaced by Bill Shepherd.  Mr. Shepherd, however, resigned his store manager position.  Thereafter, the Plaintiff was promoted to the position of store manager.[3]  As store manager, the Plaintiff reported to Westbrook.  On March 15, 2010, the Plaintiff received her 2009 store manager performance review.  Westbrook conducted the review and assigned the Plaintiff an overall performance review rating of "good".  In the review, Westbrook noted that the Plaintiff needed to improve in areas involving leadership and management ability as well as staffing and training.

On May 27, 2010, the Plaintiff received counseling from Westbrook for her failure to perform basic job duties, i.e. organizing the backroom and using the EZ planner.[4]  On June 24, 2010, the Plaintiff received a final counseling from Westbrook for her use of inappropriate language on or about May 19, 2010.  The final counseling was documented on the Defendant's "Conduct/Policy Violation

---

[2]The Plaintiff asserts that she thought she should have been promoted to the position of store manager at this time.  However, there is no evidence in the record that the Plaintiff applied for the store manager position at the time Ms. Henderson was promoted to the store manager position.  The Plaintiff alleges, however, that she complained to Westbrook of age discrimination because Ms. Henderson was younger and had less experience than the Plaintiff.

[3]During her deposition, the Plaintiff originally testified that she was promoted to store manager in March 2009 but then later testified it was around October 2009.  The Defendant offered testimony that the Plaintiff was promoted to store manager in March 2009.

[4]The Plaintiff's counseling was documented in a "S.M.A.R.T. Coaching Document."  The parties did not provide the court with this acronym's meaning.

Form." The Plaintiff refused to sign the form.  According to the Defendant's investigative file, the Plaintiff admitted to cursing at sales associate Kelly Childress.[5]  On June 24, 2010, Westbrook terminated the Plaintiff's employment with the Defendant when the Plaintiff refused to sign the final counseling.  After the Plaintiff was terminated, the Plaintiff contacted Don Walters, the regional director, and explained the events that had transpired.  Mr. Walters indicated that he would discuss the situation with Westbrook.  Westbrook subsequently contacted the Plaintiff and reinstated her to the store manager position.  The Plaintiff resumed work on June 26, 2010.

Thereafter, on June 26, 2010, the day of the Plaintiff's reinstatement, the Plaintiff prepared the store's daily deposit in the amount of $815.44 and then placed the deposit in the store's safe.  The Plaintiff testified that on Sunday, June 27, 2010 she traveled to Legend Bank and placed the deposit in the bank's night drop box.  According to the Defendant's investigative file, Lauren Hartless, a loan assistant at Legend Bank, confirmed that the Plaintiff deposited something into the night drop box at 7:56 a.m. on June 27, 2010.  However, Legend Bank did not receive the bank deposit in the amount of $815.44.  After conducting an investigation[6] into the lost deposit, Westbrook terminated the Plaintiff's employment with the Defendant on July 20, 2010 for failure to protect company assets and for losing the deposit.  On July 21, 2010, one day after the Plaintiff's termination, the missing deposit was located in the store's safe by the new store manager, Kathleen Lackey.[7]

---

[5]The Defendant's investigative file reveals that the Plaintiff admitted to stating, "I am calling him (Westbrook).  Shut the hell up and I will call him."

[6]The lost deposit was reported to the Whitesboro Police Department as well.

[7]The Defendant's investigative file disclosed the following email from Ms. Lackey to Westbrook on July 21, 2010:

> This is Kathleen.  i [sic] need to let you know that this morning when I came in to open as I was about to count the safe fund when I pulled the basket out to count the money I

During the Plaintiff's employment with the Defendant, the Plaintiff requested and received leave under the Family Medical Leave Act ("FMLA").  The Plaintiff sought intermittent FMLA leave to care for her husband who was diagnosed with Hodgkin's lymphoma.

The Plaintiff subsequently filed a charge of discrimination with the Equal Employment Opportunity Commission and the Texas Workforce Commission.  The Plaintiff alleged that from September 1, 2009 to July 20, 2010, the Defendant discriminated against her because of her sex (female), age (52), disability (association with a disabled person) and request for leave under the FMLA.  The Plaintiff further alleged that the Defendant retaliated against her.  More specifically, the Plaintiff stated the following:

> From approximately September 2009 to July 20, 2010, I believe [] was treated differently from non-class members (co-workers) who lost company funds, i.e., bank deposits, merchandise, etc. No disciplinary actions were taken against those employees like action taken against me.  I was fired and escorted out of the store by the local police and Jerry Westbrook, General Manager.
>
> I was denied Family Medical Leave of Absence (FMLA) to provide care for my disabled husband and my position was not retained in accordance with FMLA.

Thereafter, the Plaintiff filed her complaint in this court.  In her first amended complaint, the Plaintiff alleged the following causes of action:

1. Discrimination, interference and retaliation in violation of the FMLA;

2. Disability discrimination and retaliation in violation of the Americans with Disabilities Act ("ADA") and the Texas Labor Code;

3. Age discrimination and retaliation in violation of the Age Discrimination in Employment Act ("ADEA") and the Texas Labor Code;

---

found the deposit with bag number H8411443 dated 6-26-2010 sitting in the safe in the top portion shelf in plain sight.  I find it really hard to understand how no one found it in there IF it has been in there.  When I worked in here two weeks ago when you asked me to fill in over here that deposit was not in there.  Thank you.

4.    Sex discrimination and retaliation in violation of Title VII of the Civil Rights Act of 1964 and the Texas Labor Code;

5.    Slander per se;

6.    Libel per se; and

7.    Defamation.

## LEGAL STANDARD

The purpose of summary judgment is to isolate and dispose of factually unsupported claims or defenses. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986).  Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a).  A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  The trial court must resolve all reasonable doubts in favor of the party opposing the motion for summary judgment.  *Casey Enterprises, Inc. v. American Hardware Mut. Ins. Co.*, 655 F.2d 598, 602 (5th Cir. 1981)(citations omitted). The substantive law identifies which facts are material.  *See id*. at 248.

Both parties have a responsibility in the summary judgment process. *Celotex*, 477 U.S. at 323–24. First, the party seeking summary judgment must show that the admissible evidentiary material of record and any affidavits submitted by the nonmoving party are insufficient to permit the nonmoving party to carry its burden of proof.  The nonmoving party must then set forth "specific facts showing that there is a genuine issue for trial" and "may not rest upon the mere allegations or denials of his pleadings." FED. R. CIV. P. 56(e); *Anderson*, 477 U.S. at 248.  "Conclusional allegations and denials, speculation, improbable inferences, unsubstantiated assertions, and legalistic argumentation do not

adequately substitute for specific facts showing a genuine issue for trial." *Roach v. Allstate Indemnity Co.*, 2012 WL 1478745 (5th Cir. 2012), citing *SEC v. Recile*, 10 F.3d 1093, 1097 (5th Cir. 1993).

## DISCUSSION AND ANALYSIS[8]

## SEX DISCRIMINATION

"Title VII [of the Civil Rights Act of 1964] provides that '[i]t shall be an unlawful employment practice for an employer . . . to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to [her] compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin. . .'" *Anthony v. Donahoe*, 2012 WL 470193, *2 (5th Cir. 2012), quoting 42 U.S.C. § 2000e-2(a); *see also McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 796 n.4, 93 S.Ct. 1817, 36 L. Ed. 2d 668 (1973). Where, as here, there is no direct evidence of discrimination, the court turns to the burden-shifting framework established by *McDonnell Douglas*. *Id*. "Under this framework, a plaintiff must first establish a prima facie case of discrimination by showing that: '(1) [s]he is a member of a protected class, (2) [s]he was qualified for the position at issue, (3) [s]he was the subject of an adverse employment action, and (4) [s]he was treated less favorably because of h[er] membership in that protected class than were other similarly situated employees who were not members of the protected class, under nearly identical circumstances.'" *Id*. (citation omitted). "Once the plaintiff has established a prima facie case, the burden of production shifts back to the employer who must offer an alternative non-discriminatory

---

[8]The Plaintiff seeks redress for her employment discrimination claims under federal law and state law. "In enacting the TCHRA [Texas Commission on Human Rights Act], the Texas legislature intended to correlate state law with federal law in employment discrimination cases." *Spinks v. Trugreen Landcare, L.L.C.*, 322 F. Supp. 2d 784, 791 (S.D. Tex. 2004), citing TEX. LABOR CODE ANN. § 21.001 (Vernon 1996) (remaining citation omitted). "Accordingly, in employment discrimination cases, courts employ the burden-shifting analysis established by the United States Supreme Court." *Id*. (citations omitted).

explanation for the plaintiff's adverse employment action." *Id*. (citation omitted). "If the employer can produce such an explanation, then there is no inference of discrimination and the plaintiff must demonstrate that the employer's explanation is merely a pretext for discrimination." *Id*. (citation omitted).

Here, the parties agree that the Plaintiff has established the first three elements of her prima facie case. The parties, however, disagree with respect to the fourth element. The Defendant argues that the Plaintiff has offered no evidence establishing that she was treated less favorably than her male counterparts. The court agrees. The Plaintiff has failed to offer competent summary judgment evidence that shows that similarly situated employees were treated more favorably than she was treated under nearly identical circumstances. *Id*. at *3. Two similarly situated male employees were identified by the parties. Thornton "Buddy" Thomas, a 48 year old male store manager who reported to Westbrook, was involved in a situation similar to that of the Plaintiff. After a store deposit was reported missing, an investigation ensued. The bank ultimately located the deposit. The investigation revealed that the missing deposit stemmed solely from bank error. As such, Mr. Thomas was not disciplined or terminated for the missing deposit. Likewise, William Sommer, a 37 year old male store manager who reported to Westbrook, was involved in a situation similar to that of the Plaintiff. A store deposit was reported missing. The deposit was never recovered. As such, Mr. Sommer was terminated for failing to protect company assets.[9] The competent summary judgment evidence reveals that the Plaintiff's similarly situated male counterparts were subject to the same investigative process and procedures as

---

[9]The Plaintiff also attempts to compare her situation to that of her assistant store manager, Jonathan Bender. The summary judgment evidence reveals that Mr. Bender, however, was not similarly situated to the Plaintiff. Mr. Bender was an assistant store manager, not a store manager. Further, Mr. Bender was not involved with a missing deposit.

the Plaintiff.   Although similarly situated employee Thornton Thomas was not terminated, and the

Plaintiff was terminated for failing to protect company assets even though in both cases the missing

bank deposit was recovered, the difference between the two employment actions is that in Thomas's

case, the missing deposit was due solely to a bank error.   In the Plaintiff's case, she apparently deposited

something other than the Defendant's money because the money was later found in the Defendant's

store safe.   The Defendant attributed the mistake to the Plaintiff's oversight, which is a legitimate, non-

discriminatory reason for the adverse employment action.   Since the Plaintiff failed to raise a genuine

issue of material fact that similarly situated employees were treated more favorably that she was treated

under nearly identical circumstances, the Plaintiff has failed to make out a prima facie case of sex

discrimination.   Accordingly, the Plaintiff's sex discrimination claim under Title VII and the Texas

Labor Code fails.

## AGE DISCRIMINATION

"Under the ADEA [Age Discrimination in Employment Act], it is unlawful for an employer to

discharge an employee 'because of such individual's age.'" *Cervantez v. KMGP Services Company,

Inc.*, 2009 WL 2957297, *3 (5th Cir. 2009).   "To establish an ADEA claim, '[a] plaintiff must prove

by a preponderance of the evidence (which may be direct or circumstantial), that age was the "but-for"

cause of the challenged employer decision.'"   *Id.* (citation omitted).   Here, the Plaintiff relies on

circumstantial evidence; accordingly, "the burden-shifting framework of *McDonnell Douglas Corp. v.

Green* [411 U.S. 792, 802, 93 S.Ct. 1817, 36 L. Ed. 2d 668 (1973)] applies."   *Id.* (citations omitted).

"Under this standard, the employee must first establish a prima facie case of discrimination."   *Id.*

(citation omitted).   "A prima facie case requires that the employee prove that [s]he (1) belongs to the

protected group of persons over the age of forty; (2) was qualified for [her] position; (3) was discharged;

and (4) was replaced with someone younger or outside the protected group." *Id*. (citation omitted).

"The burden then shifts to the employer to produce evidence that the employee was discharged 'for a legitimate, nondiscriminatory reason.  This burden is one of production, not persuasion; it can involve no credibility assessment.'" *Id*. (citation omitted).  "If the employer is able to meet this burden, 'the *McDonnell Douglas* framework – with its presumptions and burdens – disappear[s], and the sole remaining issue [is] discrimination *vel non*.'" *Id*. (citation omitted).

> [T]he ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff.  And in attempting to satisfy this burden, the plaintiff – once the employer produces sufficient evidence to support a nondiscriminatory explanation for its decision – must be afforded the opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination.  That is, the plaintiff may attempt to establish that he was the victim of intentional discrimination by showing that the employer's proffered explanation is unworthy of credence.

*Id*., quoting *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 143, 120 S.Ct. 2097, 147 L. Ed. 2d 105 (2000) (internal quotation marks and citations omitted).

"'The issue at the pretext stage is whether [the defendant's] reason, even if incorrect, was the real reason for [the plaintiff's] termination.'" *Id*. (citation omitted).  "Courts 'do not try . . . the validity of good faith beliefs as to an employee's competence.  Motive is the issue.'" *Mayberry v. Vought Aircraft Co.*, 55 F.3d 1086, 1091 (5th Cir. 1995).

> [Yet,] [e]vidence demonstrating the falsity of the defendant's explanation . . . is likely to support an inference of discrimination even without further evidence of defendant's true motive.  Thus, the plaintiff can survive summary judgment by producing evidence that creates a jury issue as to the employer's discriminatory animus or the falsity of the employer's legitimate nondiscriminatory explanation.

*Cervantes*, 2009 WL 2957297 at *3 (citations omitted).

-10-

Here, the Defendant concedes that the Plaintiff has established the first three elements of her prima facie case.  The parties, however, disagree with respect to the fourth element.  It is undisputed that the Plaintiff was replaced by Kathleen Lackey, a 48 year old female.  Clearly, the Plaintiff was replaced by someone younger.  Accordingly, the Plaintiff has set forth a prima facie case under the *McDonnell Douglas* framework.  *See id*.

The court turns to the Defendant's proffered reason for termination.  The summary judgment evidence shows that the Defendant terminated the Plaintiff for failure to protect company assets and for losing the $815.44 deposit.  The Defendant's policy concerning deposits provides that "[f]ailure to make deposits as required by Company policy may result in disciplinary action, up to and including termination, even for the first offense."  Violating a company policy is a legitimate, non-discriminatory reason for termination.  *Id*. at n.17 (citation omitted).  Accordingly, the *McDonnell Douglas* burden-shifting framework disappears, and the court must inquire whether the Plaintiff has shown the existence of a genuine issue of material fact on age discrimination.  *See id*. at *3.

The Plaintiff first claims that she was not treated the same as other similarly situated employees.[10]  The court has already rejected this argument.  *See supra*.  The Plaintiff next argues that since the deposit was ultimately located, the Defendant's stated reason for termination was a pretext for discrimination.  However, "a fired employee's actual innocence of [her] employer's proffered accusation is irrelevant as long as the employer reasonably believed it and acted on it in good faith."

---

[10]The Plaintiff argues that Jamie Anderson, a female in her early 20s, lost $400.00 but was never reprimanded for the same.  The Plaintiff's argument is based on an incident that occurred, according to the Plaintiff, in October 2008 which was approximately one year prior to the time the Plaintiff filed her charge of discrimination.  While such information may be used as background evidence in support of a timely filed charge of discrimination, the information may not be used for the basis of liability.  *Everett v. Central Mississippi, Inc. Head Start Program*, 2011 WL 4716317, *5 (5th Cir. 2011).

*Cervantez*, 2009 WL 2957297 at *4.  The Plaintiff has failed to come forward with summary judgment evidence showing that the Defendant's proffered reason for termination was a pretext for discrimination or unworthy of credence.[11]  The Plaintiff has failed to show a fact issue as to whether age was the but-for cause of her termination.  *See Johnson v. UAH Property Management, Limited Partnership*, 2011 WL 2222216, *1 (5th Cir. 2011).[12]  Accordingly, the Plaintiff's age discrimination under the ADEA and the Texas Labor Code fails.

## DISABILITY DISCRIMINATION

The Plaintiff also raises an associational disability claim under the Americans with Disabilities Act ("ADA") and the Texas Labor Code.  "The ADA prohibits discrimination by 'excluding or otherwise denying equal jobs or benefits to a qualified individual because of the known disability of an individual with whom the qualified individual is known to have a relationship or association.'" *Collins v. Sailormen, Inc.*, 512 F. Supp. 2d 502, 508 (W.D. La. 2007), quoting 42 U.S.C. § 12112(b)(4).

The court searched for Fifth Circuit precedent on associational disability discrimination claims under the ADA but was unable to locate any such cases.  However, the Tenth Circuit has considered such claims and has instituted the following test for establishing a prima facie case: (1) the plaintiff was "qualified" for her job at the time of the adverse employment action; (2) the plaintiff was subjected to an adverse employment action; (3) the plaintiff was known by her employer at the time to have a

---

[11]The Plaintiff argues that the Defendant essentially conspired with the employees at Legend Bank.  The Plaintiff contends that once the bank employees located the lost deposit, the bank employees then provided the deposit to Westbrook so that he could "plant" the deposit in the store's safe.  The Plaintiff has offered no competent summary judgment evidence in support of this theory.

[12]The Plaintiff has presented summary judgment evidence that she complained to Westbrook of discrimination at certain times throughout her employment.  While the court considers such evidence by way of background and with respect to the Plaintiff's retaliation claims, the court notes that the Plaintiff only complained of discrimination with respect to her termination in her Charge of Discrimination.  As such, the court has limited its analysis to that which the Plaintiff alleged in her Charge of Discrimination.

relative or associate with a disability; and (4) the adverse employment action occurred under circumstances raising a reasonable inference that the disability of the relative or associate was a determining factor in the employer's decision.  *Id.*, citing *Den Hartog v. Wasatch Academy*, 129 F.3d 1076, 1085 (10th Cir. 1997).  "If the plaintiff meets her prima facie burden, the court is then instructed to apply the remainder of the *McDonnell Douglas* burden-shifting framework."  *Id.* (citation omitted).

It is undisputed that the Plaintiff meets the first three elements of the above-referenced test. However, the fourth element is in dispute.  The Plaintiff presented summary judgment evidence that she was discouraged from taking leave to care for her ailing husband.  As such, the court finds that the Plaintiff has established a prima facie case of associational disability discrimination.

However, like the Plaintiff's sex and age discrimination claims, the Plaintiff's disability discrimination claim likewise fails.  The Defendant has established a legitimate, non-discriminatory reason for the Plaintiff's termination.  However, the Plaintiff has not presented summary judgment evidence rebutting the same.  The Plaintiff has only offered her subjective belief.  Accordingly, the Plaintiff's associational disability discrimination claim under the ADA and the Texas Labor Code fails.[13]

---

[13]The Plaintiff insists that she has a viable associational disability discrimination claim under the Texas Labor Code.  As noted by the Defendant, the Texas Labor Code does not appear to permit such a cause of action.  *See Spinks v. Trugreen Landcare, L.L.C.*, 322 F. Supp. 2d 784, 795 (S.D. Tex. 2004) ("The Court researched and found no cases that involved a disability claim under only the TCHRA that also allowed a claim for disability discrimination based on an individual's association with a person with a disability or perceived disability.  The TCHRA defines disability as a mental or physical impairment that substantially limits at least one major life activity of that individual, a record of such impairment or being regarded as having such an impairment.  TEX. LABOR CODE § 21.002(6).  The TCHRA contains no provision that violations can be based on association with individuals with a disability or with individuals who are regarded as having a disability.") The court, nevertheless, considered the Plaintiff's claim under the framework stated above.

## FMLA DISCRIMINATION

### A.    *Discrimination and retaliation*

"The Family Medical Leave Act of 1993, 29 U.S.C. § 2601, et al., permits individuals who work for covered employers to take temporary leave for a 'serious health condition,' 29 U.S.C. § 2612, which includes illnesses that involve 'continuing treatment by a health care provider.' 29 U.S.C. § 2611." *Bell v. Dallas County*, 2011 WL 2672224, *2 (5th Cir. 2011).   "Section 2615(a)(2) prohibits discrimination or retaliation against an employee for exercising [her] rights under the FMLA." *Id.* (citation omitted). "When direct evidence of retaliation is unavailable, a plaintiff may establish a *prima facie* case under a modified *McDonnell-Douglas* approach by proving that: (1) the plaintiff engaged in protected activity; (2) the plaintiff suffered an adverse employment decision; and (3) [s]he was treated less favorably than an employee who had not requested FMLA leave; or, (4) the adverse decision was due to the plaintiff's use of FMLA leave." *Id.* (citation omitted). "To demonstrate a causal link between the protected activity and termination, a plaintiff must show only that 'the protected activity and the adverse employment action are not completely unrelated.'" *Id.* (citation omitted). "If the plaintiff does this, the burden shifts to the employer to demonstrate a legitimate reason for the employee's discharge." *Id.* (citation omitted). "If the employer demonstrates a legitimate reason for termination, the burden shifts back to the employee to show 'by a preponderance of the evidence that the employer's articulated reason is a pretext for discrimination.'" *Id.* (citation omitted).

Here, the parties agree that the Plaintiff established the first two prongs of her discrimination/retaliation prima facie case under the FMLA.  However, the Defendant contends that the Plaintiff failed to establish the third prong involving causation.  The court agrees, for the reasons stated *supra.*, that the Plaintiff failed to show that she was treated less favorably than a comparable employee

-14-

who did not request FMLA leave.  However, since the Plaintiff was terminated during her exercise of FMLA leave, the court concludes that the temporal proximity between her FMLA leave and her discharge is sufficient to establish the necessary causal link for a prima facie case.  *Leal v. BFT, Limited Partnership*, 2011 WL 1659573, *3 (5th Cir. 2011).

The burden then shifts to the Defendant to establish a legitimate reason for the Plaintiff's termination.  As noted previously, the Defendant has met its burden.  The burden, therefore, shifts back to the Plaintiff to offer evidence that would permit a reasonable trier of fact to find that the Defendant's proffered reason was a pretext for retaliation for the Plaintiff's exercise of FMLA leave.  *Id*. at 2011 WL 1659573, *4.  The Plaintiff "'must reveal a conflict in substantial evidence on the ultimate issue of retaliation in order to withstand a motion for summary judgment.'"  *Id*. (citation omitted).  "Evidence is substantial if it is of 'such quality and weight that reasonable and fair minded persons in the exercise of impartial judgment might reach different conclusions.'"  *Id*. (citation omitted).  For all of the reasons previously stated, the Plaintiff failed to offer competent summary judgment evidence that would permit a reasonable trier of fact to find that the Defendant's proffered reason for the Plaintiff's termination was a pretext for retaliation for the Plaintiff's exercise of FMLA leave.  The Plaintiff has only offered her subjective belief.

### B.    *Interference*

"Under § 2615(a)(1), an employer is prohibited from interfering with or restraining an employee from exercising, or attempting to exercise, [her] FMLA rights."  *Bell*, 2011 WL 2672224, *3.  "The term 'interference with' includes 'not only refusing to authorize FMLA leave, but discouraging an employee from using such leave.'"  *Id*., quoting 29 C.F.R. § 825.220(b) (2010) (remaining citation omitted).  "With an interference claim, an employee must show that [s]he was denied [her] entitlements

under the FMLA, or, that an employer did not respect the employee's FMLA entitlements." *Id.* (citation

omitted).

Here, the Plaintiff requested and received intermittent FMLA leave to care for her ailing

husband. The Plaintiff argues, however, that the Defendant interfered with her ability to take her FMLA

leave. The Plaintiff averred as follows:

> On or about May 20, 2010 I applied for intermittent leave under the Family and
> Medical Leave Act ("FMLA") to assist my disabled husband with chemotherapy
> treatments for cancer, and my FMLA request was ultimately approved. My husband
> Daryl had Hodgkins lymphoma cancer and had to have chemotherapy every 14 days.
> I submitted my husband's chemotherapy schedule well in advance to Mr. Westbrook so
> I could have those days off to take my disabled husband to chemotherapy and Mr.
> Westbrook could send someone to do my job while I was gone. He failed to do so,
> causing me to get behind on my work, and Mr. Westbrook would yell at me for not
> getting my work done and threaten to write me up and terminate me if I did not get
> caught up and even put me on a coaching document on May 27, 2010. So I would work
> 12, 13, and 14 hour days to get the work done. I needed the job to pay my family's bills
> because my husband was too sick to work. On my husband's chemotherapy days I
> would go in at 4 or 5 am and work until 9 or 10 am and take my husband to
> chemotherapy and them come back to work after his chemotherapy and close the store.

PL. RESPONSE TO DEFENDANT'S MTN. FOR SUMMARY JUDGMENT, EXH. 23, pp. 4-5, ¶ 7.

In response, the Defendant argues that the Plaintiff only requested intermittent leave one day at

a time. As such, the Defendant contends that it was not necessary to bring in an outside store manager

for one day every two weeks. Rather, the Defendant argues that the Plaintiff could have scheduled

herself off and the assistant store manager could cover the store. The Plaintiff argues that she did not

trust her assistant store manager to cover the store. Further, the Plaintiff contends that she requested

additional assistance to cover her store during her intermittent FMLA absence. However, the summary

judgment evidence shows that the Plaintiff did not work every day of the week. The summary judgment

evidence further shows that she did not require additional assistance to cover her store during her

regular days off. It does not seem logical that the Plaintiff would have required additional assistance covering her store during her intermittent FMLA leave one day every two weeks. While the Plaintiff might have subjectively felt deterred in taking her FMLA leave, the summary judgment evidence does not establish an FMLA interference claim.

## RETALIATION

1. **APPLICABLE LAW**

"Title VII prohibits retaliation against an employee who has engaged in activity protected by the Act:

> It shall be an unlawful employment practice for an employer to discriminate against any of his employees . . . because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter."

*Beaumont v. Texas Department of Criminal Justice*, 468 F.Supp.2d 907, 922 (E.D. Tex. 2006). "Title VII does not protect plaintiffs from unfair decisions, but only from decisions based on unlawful discrimination." *Fullen v. Galveston Independent School District*, 564 F.Supp.2d 719, 728 (S.D. Tex. 2008) (citation omitted). "Plaintiff may rely on either direct or circumstantial evidence, or both, to prove [her] claims." *Id*. (citations omitted). Here, it is undisputed that the Plaintiff is relying solely on circumstantial evidence of retaliation. As such, the court will apply the *McDonnell Douglas* burden-shifting standard. *See Arrieta v. Yellow Transportation, Inc.*, 2008 WL 5220569, *16 (N.D. Tex. 2008).

"The *McDonnell Douglas* burden-shifting analysis requires the plaintiff to present evidence establishing the existence of a *prima facie* case." *Fullen*, 564 F.Supp.2d at 729 (citation omitted). "To establish a *prima facie* case of retaliation, a plaintiff must show:

(1)     [she] engaged in statutorily protected activity under Title VII;

-17-

(2)     action was taken by the employer against the plaintiff that a reasonable employee would consider materially adverse; and

(3)     a causal connection exists between the protected activity and the adverse action."

*Beaumont*, 468 F.Supp.2d at 922 (citations omitted). "Once the plaintiff establishes a *prima facie* case, a presumption of discrimination arises and the burden of production shifts to the defendant to offer evidence of a legitimate, non-discriminatory reason for the actions at issue." *Fullen*, 564 F.Supp.2d at 729 (citation omitted). "If the defendant meets this burden of production, the presumption of discrimination created by the plaintiff's *prima facie* case disappears, and the burden shifts to the plaintiff to produce evidence capable of meeting the ultimate burden of persuasion on the issue of intentional discrimination." *Id*. "A plaintiff meets this burden by producing evidence tending to show

(1)     that the defendant's reason is not true, but is instead a pretext for discrimination (pretext alternative); or

(2)     that the defendant's reason, while true, is only one of the reasons for its conduct, and another 'motivating factor' is the plaintiff's protected characteristic (mixed-motive[s] alternative)."

*Fullen*, 564 F.Supp.2d at 729 (citations omitted).

Here, the Plaintiff has opted to proceed under the pretext alternative. "Under a pretext theory, to carry [her] ultimate burden, the plaintiff must demonstrate that the adverse employment action would not have occurred 'but for' the employee's participation in the protected activity." *Beaumont*, 468 F.Supp.2d at 922 (citations omitted).[14]

---

[14]The prima facie elements of retaliation are the same under Title VII, the ADA and the ADEA. In Title VII, ADA and ADEA retaliation cases, after the defendant meets its burden of production, the presumption of discrimination disappears and the burden shifts back to the Plaintiff. Under Title VII, the Plaintiff meets her burden by establishing discrimination through one of the two methods stated above. Since the Plaintiff herein has only argued pretext, the court need not address the mixed-motive alternative.

-18-

## 2. *Prima Facie* Case

Here, the Plaintiff complained to human resources about her allegations of discrimination on June 25, 2010.  Additionally, the Plaintiff complained to Westbrook about alleged discrimination periodically throughout her employment with the Defendant.  These complaints are clearly protected activity within the meaning of Title VII.  *See Harvill v. Westward Communications, L.L.C.*, 433 F.3d 428, 439 (5th Cir. 2005).  Further, it is agreed that the Plaintiff's employment was terminated.

With respect to the third element, timing appears to provide the requisite causal link.  "Although the third element of a *prima facie* case – causation – is similar to the ultimate issue in an unlawful retaliation claim, the standard for establishing a causal link at the *prima facie* case stage is much less stringent."  *Beaumont*, 468 F.Supp.2d at 924 (citations omitted).  "A plaintiff need not prove that [her] protected activity was the sole factor in motivating the employer's challenged decision in order to establish the requisite causal link."  *Id*. (citations omitted).  "Rather, a causal link is established when the evidence demonstrates that the employer's decision to take adverse action was based in part on knowledge of the employee's protected activity."  *Id*. (citations omitted).

"The consideration of three factors may be helpful in determining whether a causal link has been demonstrated at the *prima facie* case stage: (1) the plaintiff's past disciplinary record, (2) whether the employer followed its typical policies and procedures when taking adverse action against the employee, and (3) the temporal relationship between the employee's conduct and the adverse act."  *Id*. (citations omitted).  "'The timing of the adverse employment action can be a significant, although not necessarily determinative, factor.'"  *Id*., quoting *Mayberry v. Vought Aircraft Co.*, 55 F.3d 1086, 1092 (5th Cir. 1995) (remaining citation omitted).  Close timing between an employee's protected activity and an adverse employment action may provide the requisite causal connection necessary to make out a *prima*

*facie* case of retaliation.  *Id.* at 924-25, quoting *Mayberry*, 55 F.3d at 1092 (remaining citations omitted).  "The temporal proximity, however, must be 'very close.'" *Id.* at 925 (citation omitted).

Here, the Plaintiff's employment was terminated less than one month after the Plaintiff complained of discrimination.  The court finds that the close timing between the two events provides the requisite causal connection to establish a *prima facie* case of retaliation.

### 3.    DEFENDANT'S REASON FOR TERMINATION

The summary judgment evidence shows that the Defendant terminated the Plaintiff for failure to protect company assets and for losing the $815.44 deposit.  As noted previously, the court finds that the Defendant presented competent summary judgment evidence of its legitimate, non-discriminatory reason for the Plaintiff's discharge.

### 4.    PRETEXT

In an effort to prove that her termination would not have occurred but for lodging her complaints of discrimination, the Plaintiff argues that the Defendant's reason for discharging her is a pretext for discrimination.  The Plaintiff contends that since the deposit was ultimately located, the Defendant's stated reason for termination was a pretext for discrimination.

The Plaintiff's argument falls short of meeting her ultimate burden of persuasion on the issue of intentional discrimination.  These facts, taken in the light most favorable to the Plaintiff, do not present a genuine issue of material fact concerning the requisite "but for" causation.  The Plaintiff has failed to produce legally sufficient evidence that she would not have been terminated but for her complaints of discrimination.

### DEFAMATION

"To establish a defamation claim, a plaintiff must demonstrate: (1) the defendant published a

factual statement; (2) that was capable of defamatory meaning; (3) concerning the plaintiff; (4) while

acting with either negligence, if the plaintiff is a private individual, or actual malice, if the plaintiff is

a public figure or public official, concerning the truth of the statement." *Houseman v. Publicaciones

Paso del Norte, S.A. DE C.V.*, 242 S.W.3d 518, 523-24 (Tex. App. – El Paso 2007, no pet.).

"Defamation is a false statement about a person, published to a third party, without legal excuse, which

damages the person's reputation." *Fiber Systems International, Inc. v. Roehrs*, 470 F.3d 1150, 1161

(5th Cir. 2006). "To be defamatory, words must be false." *Alaniz v. Hoyt*, 105 S.W.3d 330, 345 (Tex.

App. – Corpus Christi 2003, no pet.). "Words are defamatory if they tend to harm a person's

reputation." *Id*. "Words that expose a person to public hatred, contempt, ridicule, or financial injury

harm a person's reputation." *Id*.

"Generally, there are two types of defamatory words: (1) defamation per se, or words that are

actionable in and of themselves, which does not require any allegation of special damages; and (2)

defamation per quod, or words that are actionable only on allegations and proof of special damages."

*Id*. While "[p]leading libel *per se* eliminates the requirement of pleading or proving special damages,

[ ] it does not shift the plaintiff's burden of proving the elements of its cause of action, . . ." *UTV of San

Antonio, Inc. v. Ardmore, Inc.*, 82 S.W.3d 609, 610 (Tex. App. – San Antonio 2002, no pet.).

"Defamation is actionable per se if it injures a person in his office, business, profession, or

occupation." *Morrill v. Cisek*, 226 S.W.3d 545, 549 (Tex. App. – Houston [1st Dist.] 2006, no pet.).

"A false statement that charges a person with the commission of a crime is also libelous per se." *Id*. at

549-50.

The Plaintiff avers as follows:

Kathleen Lackey (48 years old in 2010), Store Manager who replaced me upon

my firing, told several people who came into Dollar General that I was fired for theft on several different occasions as well as said that to Pat Fennell and Jonathan Bender. Pat Fennell told her to stop but she continued, and people outside Dollar General have told me about the theft statements, and one person even quit associating with me. Defendant has libeled me as its records to [sic] reflect that I falsely engaged in "Cash Theft" and "Dishonesty," and Defendant put on my permanent employment record and told prospective employer Frito-Lay on a background check that I was terminated for a missing deposit even thought the deposit was found and that I was not eligible for rehire. This blocks me from going back into the insurance field for employment which typically involves handling of cash.

PL. RESPONSE TO DEFENDANT'S MTN. FOR SUMMARY JUDGMENT, EXH. 23, pp. 12-13, ¶ 18. Other than the Plaintiff's subjective belief that she was the victim of defamation, the Plaintiff has failed to offer any competent summary judgment evidence concerning the same. The Plaintiff only offered hearsay statements, speculation and unsubstantiated assertions that she was the subject of any defamatory remarks. Accordingly, the Plaintiff has failed to show that a genuine issue of material fact exists with respect to her defamation claims.

## CONCLUSION

Based on the foregoing, the court finds that the Defendant's motion for complete summary judgment (docket entry #24) is hereby **GRANTED**. The Plaintiff's motion to compel (docket entry # 19) is hereby **DENIED**.

IT IS SO ORDERED.

**SIGNED this the 1st day of June, 2012.**

_Richard A. Schell_
RICHARD A. SCHELL
UNITED STATES DISTRICT JUDGE

-22-